IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**DAMARIS ROJAS-RAMIREZ,**

    **Plaintiff,**

    v.

**BMJ FOODS, INC. d/b/a PONDEROSA STEAKHOUSE, et al.**

    **Defendants.**

Civil No. 09-1593 (GAG)

**OPINION AND ORDER**

Plaintiff Damaris Rojas-Ramirez ("Plaintiff") brings this action against Defendants BMJ Foods, Inc. d/b/a Ponderosa Steakhouse ("BMJ"), and unnamed insurance companies, alleging sexual harassment through the creation of a hostile work environment and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.* and the Civil Rights Act of 1991, 42 U.S.C. §§ 1981a and 1988. Plaintiff also brings state claims alleging violations of Puerto Rico Law 17 of April 22, 1981, P.R. Laws Ann. tit. 29, §§ 155 *et seq.*; Puerto Rico Law 100 of June 30, 1959, P.R. Laws Ann. tit. 29, §§ 146 *et seq.*; Puerto Rico Law 69 of July 6, 1985, P.R. Laws Ann. tit. 29, §§ 1321 *et seq.*; Puerto Rico Law 80 of May 30, 1976, P.R. Laws Ann. tit. 29, §§ 185a *et seq.*; and Puerto Rico Law 115 of December 20, 1991, P.R. Laws Ann. tit. 29 § 194a.

Presently before the court is BMJ's motion for summary judgment (Docket No. 26). Plaintiff opposed the motion (Docket No. 36). By leave of the court, BMJ filed a reply brief (Docket No. 57) which Plaintiff opposed by sur-reply (Docket No. 61). After reviewing these submissions and the pertinent law, the court **GRANTS** in part and **DENIES** in part BMJ's motion at Docket No. 26.

**I.     Legal Standard**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (citations omitted). The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325. "The movant must aver an absence of evidence to support the nonmoving party's case. The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both genuine and material." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). The nonmoving party must then "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party and give that party the benefit of any and all reasonable inferences. Id. at 255. Moreover, at the summary judgment stage, the court does not make credibility determinations or weigh the evidence. Id. Summary judgment may be appropriate, however, if the non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Municipality of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

**II.     Factual and Procedural Background**

Consistent with the summary judgment standard, the court states the facts in the light most favorable to Plaintiff. See Iverson, 452 F.3d at 98. The court has disregarded all argument, conclusory allegations, speculation, and improbable inferences disguised as facts. See Forestier Fradera, 440 F.3d at 21.

Plaintiff Damaris Rojas-Ramirez began working for BMJ on January 10, 2007. (See Docket Nos. 26-1 ¶ 1; 37 at 2.) She was assigned to kitchen duties at the Ponderosa restaurant located at El Amal ("Ponderosa"). (See Docket Nos. 26-1 ¶ 2; 37 at 2.) Plaintiff's duties included grilling,

frying and "working in the assembly area when the meals were ready." (See Docket Nos. 26-1 ¶ 3; 37 at 2-3.) Plaintiff was notified of BMJ's sexual harassment policy when she received the employee's handbook at the beginning of her employment. (See Docket Nos. 26-1 ¶ 4; 37 at 3.) Ponderosa restaurant supervisors had rotating shifts. (See Docket Nos. 26-1 ¶ 5; 37 at 3.) Yolanda Cortes, Juan Delgado, Hector Rabell, Magda Rios and Juan Rivera were managers or assistant managers at Ponderosa while Plaintiff was employed by BMJ. (See Docket Nos. 26-1 ¶ 7; 37 at 3.) There are around fifteen employees in Ponderosa, approximately three of which were assigned to Plaintiff's working area and had similar duties. (See Docket Nos. 26-1 ¶ 8; 37 at 3-4.)

At some point prior to June 8, 2007, Plaintiff was suspended from work for misconduct. (See Docket Nos. 26-1 ¶ 21; 37 at 8.) On June 8, 2007, Plaintiff filed a discrimination complaint with Puerto Rico's Anti-Discrimination Unit ("ADU") and the Equal Employment Opportunity Commission ("EEOC"). (See Docket Nos. 9 ¶ 6; 13 ¶ 2.) A right to sue letter was issued by the EEOC on March 30, 2009. Id.

Plaintiff was given a written warning on October 5, 2007 for alleged non-compliance with a company rule. (See Docket Nos. 9 ¶ 58 and 13 ¶ 29.) On October 23, 2007 a letter was sent by BMJ to Plaintiff's attorney informing Plaintiff that "after an exhaustive investigation of [an incident involving Plaintiff], and after a thorough study of her personnel file . . . they are proceeding to permanently separate [Plaintiff] from her employment with [BMJ]." (See Docket No. 53-13.) The parties agree that Plaintiff's employment with BMJ was terminated on October 23, 2007. (See Docket Nos. 37 at 19; 57-1 at 14.)

On June 29, 2009, Plaintiff filed this complaint (Docket No. 1) under Title VII, claiming that she had been subjected to sexual harassment, sex discrimination, and retaliation by her superiors at Ponderosa.[1] An amended complaint (Docket No. 9) was filed on October 28, 2009. BMJ answered the amended complaint (Docket No. 13). On September 30, 2010, BMJ filed a motion for summary

---

[1] Plaintiff's supervisor Juan Delgado, Ponderosa general manager Hector Rabell, their respective spouses and conjugal partnerships were included as defendants in the original complaint. (See Docket No. 1.)

**Civil No. 09-1593 (GAG)**                                4

judgement claiming that Plaintiff fails to make out a *prima facie* case of sexual harassment and retaliation, and that its justification for termination is legitimate and non-discriminatory (Docket No. 26). Plaintiff opposed the motion (Docket No. 36), BMJ replied (Docket No. 57), and Plaintiff sur-replied (Docket No. 61). Plaintiff also moved to strike evidence submitted by BMJ in support of its motion for summary judgment (Docket No. 38). BMJ opposed (Docket No. 51) and Plaintiff replied (Docket No. 62).

**III.    Discussion**

Before looking to BMJ's motion for summary judgment the court will address Plaintiff's motion to strike (Docket No. 38).

    **A.    Motion to Strike**

        **1.    Compliance with Local Rule 56**

Local Rule 56(e) requires record citations in a "statement of material facts" to be cited to "the specific page or paragraph of identified record material supporting the assertion." Local Rule 56(e). "The court may disregard any statement of fact not supported by a specific citation." Id. "The purpose of this rule is to relieve the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute." CMI Capital Market Investment, LLC v. Gonzalez-Toro, 520 F.3d 58, 62 (1st Cir. 2008).

Plaintiff requests that all of BMJ's documentary evidence submitted in support of its statement of uncontested material facts ("SUMF") be excluded from the summary judgment record for failure to identify the record material. (See Docket No. 38 at 2-3.) Plaintiff argues that BMJ's SUMF contains letter-referenced exhibits (i.e. Exhibit "A"), but that no document accompanying BMJ's SUMF was identified as such.[2] Id. at 2. In its opposition, BMJ points to its electronic filing

---

[2] Plaintiff argues that Exhibit A was not submitted for the record. The court notes BMJ's SUMF cites to Exhibit A referencing an "initial training confirmation." (See Docket No. 38 at 2.) The court also notes that BMJ's statement of uncontested material facts is filed as Exhibit A (Docket No. 26-1). An "initial training confirmation" is filed as part of Exhibits M (Docket No. 31-1) and X (Docket No. 26-24). However, this is of no consequence as BMJ merely referenced the "initial training confirmation" to establish the date Plaintiff's employment with BMJ began (see Docket No. 26-1 ¶ 1) and this date was subsequently admitted by Plaintiff in her opposition. (See Docket No.

**Civil No. 09-1593 (GAG)**                             5

on the CM/ECF system, claiming that "each document was filed separately and identified, not only with the corresponding [e]xhibit letter, but also with a short title next to the identifying letter." (See Docket No. 51 at 4.)

The court has discretion in applying this rule and declines to strike BMJ's documentary evidence for failure to identify the record material. The court manages every case docket electronically. Every filing has a corresponding docket number. BMJ's exhibits are filed at docket number 26. Looking at docket number 26, the court notes that BMJ identified each exhibit with a letter and a corresponding short description. In the present case, the exhibits correspond with BMJ's SUMF, relieving the court of any necessity to search the record for factual support. See Local Rule 56(e). BMJ has submitted its SUMF with appropriate references to the record and is therefore, deemed in compliance with Local Rule 56. Accordingly, Plaintiff's request to strike from the summary judgment record all documentary evidence submitted by BMJ to support its SUMF is **DENIED**.

    **2.**    **Hearsay**

Plaintiff further moves to strike Exhibits J, N, P, U, Y, F, G, H, I, K, L, O, Q, R, S, T, W and X arguing that this evidence constitutes inadmissible hearsay under Palmer v. Hoffman, 318 U.S. 109 (1943), and thus, cannot be considered on summary judgment.[3] (See Docket No. 38 at 6 and 8-9.) Plaintiff contends that Exhibits J, N, P, U and Y are investigation reports submitted to prove the truth of the matter asserted within and do not fall within any exception to the hearsay rule. Id.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial

---

37 at 2.)

[3] Plaintiff contends that under Palmer v. Hoffman, 318 U.S. 109 (1943), these exhibits are not records of regularly conducted activity because BMJ is in the business of selling food and not obtaining or preparing investigation reports of incidents at the workplace. (See Docket No. 38 at 6.) Plaintiff further contends that the content of the investigation reports constitutes multiple hearsay and BMJ has not satisfied the burden of establishing an exception to the hearsay rule "for each and every link in the chain of multiple hearsay." (See Docket No. 38 at 7.) Plaintiff also argues that Exhibits J, N, P, U and Y should be excluded "because they are self-serving and have no warrants of reliability." Id.

or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). Generally, evidence that constitutes hearsay is not admissible at trial or for summary judgment purposes, unless it falls within one of the exceptions specified in the Federal Rules of Evidence. Ramirez Rodriguez v. Boehringer Ingelheim Pharmaceuticals, Inc., 425 F.3d 67, 76 (1st Cir. 2005) (internal citations omitted). "[W]hether a particular statement falls within a hearsay exception is relevant only if the statement is, in fact, hearsay." Id. Not all out of court statements are inadmissible as hearsay. Morgan v. Mass. General Hosp., 901 F.2d 186, 190 (1st Cir. 1990).

For purposes of summary judgment, the court finds that the reports and statements found in Exhibits J, N, P, U, Y, F, G, H, I, K, L, O, Q, R, S, T, W and X are not offered to prove the matter asserted therein, and hence, do not constitute hearsay. These documents are offered to demonstrate that BMJ had conducted an investigation and to disclose the information it had relied on in making its decision to terminate Plaintiff. The court understands that these exhibits are not offered to prove any particular versions of the alleged incidents, but to demonstrate the steps BMJ took and what information it received during its investigation. These documents were offered in evidence as proof of BMJ's motivation for dismissing Plaintiff and not for the accusations contained therein. As such, these exhibits are circumstantial evidence of a relevant fact, BMJ's non-discriminatory intent, and do not constitute inadmissible hearsay. See Morgan, 901 F.2d at 190 (affirming district court decision to admit documents, not for proving the truth of their content, but to prove what steps were taken to investigate the circumstances surrounding an assault); Noviello v. City of Boston, 398 F.3d 76, 84-85 (1st Cir. 2005) (recognizing that Plaintiff's recount of insults and taunting by supervisors do not create a hearsay problem because those statements were not offered for their truth, but to show that the words were spoken).

The court finds that the statements made by other Ponderosa employees recorded in the investigations reports are non-hearsay as well, to the extent that they are simply offered as evidence of the information submitted to BMJ as part of an investigation. See Haddad v. Lockheed Cal. Corp., 720 F.2d 1454, 1456 (9th Cir.1983) (affirming district court decision that complaints were not hearsay when offered not for the truth of the complaints but to show employer's receipt of complaints and employer's non-discriminatory intent in its employment practices). They are offered

solely for the purpose of establishing a legitimate and non-discriminatory reason for its decision and not to prove the truth of the matter contained therein. Accordingly, the court **DENIES** Plaintiff's request to strike Exhibits J, N, P, U, Y, F, G, H, I, K, L, O, Q, R, S, T, W and X on hearsay grounds. The aforementioned exhibits will be taken into consideration solely to address what information BMJ had before it prior to dismissing Plaintiff.

### 3.    Authentication

Plaintiff further argues that the reports and memoranda comprised in Exhibits F, G, H, I, K, L, O, Q, R, S, T, W and X are inadmissible because they were not properly authenticated by an affidavit or an unsworn statement under penalty of perjury. (See Docket No. 38 at 8-9.) Plaintiff contends that "[t]he alleged signatories of [these documents], as affiants, do not swear to the truthfulness, under penalty of perjury, of the facts alleged in the documents." (See Docket No. 38 at 9.)

"Documents supporting or opposing summary judgment must be properly authenticated." Carmona v. Toledo, 215 F.3d 124, 131 (1st Cir. 2000) (citing Fed. R. Civ. P. 56(e)). Federal Rule of Evidence 901(a) provides that "the requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed.R.Evid.901(a). For documents to be admissible during the summary judgment stage, these must be authenticated by and attached to an affidavit or unsworn statement under penalty of perjury that meets the requirements of Federal Rule of Civil Procedure 56(e). Mercado v. Hospital Cayetano Coll Y Toste, 2010 WL 3419969 at *7 n.2 (D.P.R. Aug. 26, 2010) (citing 10 A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2722 (3d ed. 1998)); see also Carmona, 215 F.3d at 131. "Under Federal Rule of Civil Procedure 56(e), on summary judgment, the parties in their supporting affidavits shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Hoffman v. Applicators Sales And Service, Inc., 439 F.3d 9, 14 (1st Cir. 2006) (internal citations and quotations omitted). "Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." Id. Failure to properly authenticate the supporting documents precludes the

court's consideration of the same. See Carmona, 215 F.3d at 131.

Defendants have attached Nelsa Zequeria's statement under penalty of perjury for the purpose of authenticating–among other exhibits–Exhibits F, G, H, I, K, L, O, Q, R, S, T, W and X (Docket No. 28-1). Nelsa Zequeria states that: (1) she is BMJ's Vice-President of Administration and Human Resources; (2) the documents attached to BMJ's SUMF "are true and exact copies of those included in [Plaintiff's] personnel record as former employee of [BMJ], and so are the documents relating to the different investigations conducted about incidents involving [Plaintiff];" (3) the documents were prepared by her and by BMJ staff or personnel; (4) she "was in charge of the investigations for the incidents . . . [in which] plaintiff was a participant, as well as, the investigation for the sexual harassment charge she filed before the ADU;" and (5) she has personal knowledge of the information because she spoke to Plaintiff, or was consulted, about her misconduct on different occasions. (See Docket No. 28-1.) The court notes that Exhibits F, I, K and L are addressed to Nelsa Zequeira. (See Docket Nos. 26-6; 26-9; 26-11; and 26-12.) Exhibit X is Plaintiff's disciplinary record signed by Nelsa Zequeria. (See Docket No. 26-24.)

"The authentication requirement is rarely onerous; in many instances, a single sentence will suffice, indicating that the document is what it appears to be." Goguen ex rel. Estate of Goguen v. Textron, Inc., 234 F.R.D. 13, 17 (D.Mass. 2006). The court finds that Exhibits F, G, H, I, K, L, O, Q, R, S, T, W and X have been properly authenticated by Nelsa Zequeria's statement under penalty of perjury. Ms. Zequeria's statement indicates that the documents are what they purport to be: true and exact copies of those included in Plaintiff's personnel file and those prepared during the investigations involving Plaintiff. Having been authenticated under penalty of perjury by someone with personal knowledge of the information stated therein, the exhibits listed above are admissible in evidence. Consequently, Plaintiff's request to strike Exhibits F, G, H, I, K, L, O, Q, R, S, T, W and X from the summary judgment record for lack of an authenticating affidavit or unsworn statement under penalty of perjury is **DENIED.**

### 4. Plaintiff's Deposition

Plaintiff also contends that Exhibit B is not admissible for summary judgment on authentication grounds. (See Docket No. 38 at 9-10.) Plaintiff argues that "BMJ failed to properly

**Civil No. 09-1593 (GAG)**                           9

authenticate what it alleges is plaintiff's deposition testimony" because "[it] did not submit, with the deposition excerpts, the court reporter's certification that the deposition is a true record of the testimony of the deponent." (See Docket No. 38 at 10.)

Federal Rule of Civil Procedure 30(f)(1) deals with authentication of depositions by certification of the officer taking the deposition. The rule states that "[t]he officer must certify in writing that . . . the deposition accurately records the witness testimony. The certificate must accompany the record of the deposition." Fed.R.Civ.P. 30(f)(1).

A quick look at Exhibit B reveals the reporter's certification "that the foregoing is a true and accurate transcript of the recording of the proceedings." (See Docket No. 26-2 at 84.) Whereas the officer taking the deposition certified that the deposition accurately records Plaintiff's testimony, the court finds that Exhibit B was properly authenticated. Accordingly, Plaintiff's request to strike Exhibit B from the summary judgment record is **DENIED.**

**B.     BMJ's motion for summary judgment**

Plaintiff alleges that she was a victim of both hostile work environment sexual discrimination and retaliation, in violation of Title VII.[4] BMJ contends that it is entitled to summary judgment because (1) Plaintiff fails to establish a *prima facie* case of sexual harassment and retaliation; and (2) BMJ's justification for termination is legitimate and non-discriminatory or retaliatory. (See Docket No. 26 at 1-2.)

**1.     Title VII Claims**

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-

---

[4] Plaintiff's complaint seems to be severing her sex discrimination and sexual harassment claims. Nevertheless, a reading of the complaint reveals that the basis of Plaintiff's sex discrimination claim is the acts that allegedly constituted sexual harassment. Sexual harassment constitutes sex discrimination prohibited by Title VII. Gorski v. N.H. Dep't of Corrections, 290 F.3d 466, 472 (1st Cir. 2002). Accordingly, as BMJ did in its motion requesting summary judgment, the court will examine Plaintiff's sex discrimination claim solely in the form of harassment.

2(a)(1). There are various types of actionable sexual harassment claims under Title VII: *quid pro quo* harassment claims, hostile work environment claims, and retaliation claims. See Valentin-Almeyda v. Muncipality of Aguadilla, 447 F.3d 85, 94 (1st Cir. 2006). The instant case does not involve a *quid pro quo* claim, and so the court limits its analysis to hostile work environment and retaliation claims.

### a.     Hostile Work Environment

A plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment. Forrest v. Brinker Intern. Payroll Co., LP, 511 F.3d 225, 228 (1st Cir. 2007) (internal citations and quotations omitted). A Title VII hostile work environment claim exists where a "workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Harris v. Forklift Sys., 510 U.S. 17, 21 (1993) (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986)). To succeed in a hostile work environment claim, a plaintiff must show:

> (1) that she (or he) is a member of a protected class; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established.

Forrest, 511 F.3d at 228 (quoting Crowley v. L.L.Bean, Inc., 303 F.3d 387, 395 (1st Cir. 2002)).

BMJ seeks summary judgment on the "sufficiently severe or pervasive" element of Plaintiff's hostile work environment claim. (See Docket No. 26 at 12-13 and 15.) BMJ contends that the alleged incidents of harassment cited by Plaintiff were not sufficiently severe or pervasive to support a hostile work environment claim. Id.

The standards for judging hostility are sufficiently demanding "to ensure that Title VII does not become a 'general civility code.'" Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (internal citations and quotations omitted). "[Title VII] forbids only behavior so objectively offensive as to alter the 'conditions' of the victim's employment." Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 81 (1998). "Conduct that is not severe or pervasive enough to create an

objectively hostile or abusive work environment–an environment that a reasonable person would find hostile or abusive–is beyond Title VII's purview." Harris, 510 U.S. at 21. The Supreme Court has clarified that "conduct must be extreme to amount to a change in the terms and conditions of employment." Id.

The severe or pervasive inquiry is highly fact specific. Molina-Quintero v. Caribe G.E. Power Breakers, Inc., 234 F. Supp. 2d 108, 112 (D.P.R. 2002) (citing Conto v. Concord Hosp., Inc., 265 F.3d 79, 81 (1st Cir. 2001)). To assess whether conduct is sufficiently severe or pervasive to create a hostile environment, the court must consider the totality of the circumstances. See Medina v. Adecco, 561 F. Supp. 2d 162, 173 (D.P.R. 2008). There is no mathematically precise test used to determine whether a plaintiff has presented sufficient evidence that he or she was subjected to a severely or pervasively hostile work environment. Pomales v. Celulares Telefonica, Inc., 447 F.3d 79, 83 (1st Cir. 2006) (quoting Kosereis v. Rhode Island, 331 F.3d 207, 216 (1st Cir. 2003)). Factors to be considered include "the frequency of the discriminatory conduct; its severity; whether it is threatening or humiliating, or merely an offensive utterance; and whether it unreasonably interferes with the employee's work performance." Marrero v. Goya of P.R., Inc., 304 F.3d 7, 18-19 (1st Cir. 2002) (quoting Harris, 510 U.S. at 23). "'Subject to some policing at the outer bounds,' it is for the jury to weigh those factors and decide whether the harassment was of a kind or to a degree that a reasonable person would have felt that it affected the conditions of her employment." Id. at 19 (citing Gorski v. N.H. Dep't of Corrections, 290 F.3d 466, 474 (1st Cir. 2002)).

In characterizing the hostile or abusive workplace, courts have drawn a continuum between commonplace indignities and actionable harassment. Offhand remarks, simple teasing, tepid jokes, and isolated incidents are at the commonplace indignities end of the continuum. This type of behavior, standing alone, usually does not amount to a hostile work environment. Severe or pervasive discriminatory remarks, ridicule, and intimidation fall at the other end of the continuum and may support a jury verdict finding a hostile work environment. Noviello, 398 F.3d at 92; Marrero, 304 F.3d at 19; Figueroa Reyes v. Hosp. San Pablo del Este, 389 F. Supp. 2d 205, 213 (D.P.R. 2005). Determining where along the continuum specific conduct lies is a difficult task typically best left to a jury. Figueora-Garcia v. Lilly del Caribe, Inc., 490 F. Supp. 2d 193, 205

**Civil No. 09-1593 (GAG)**                                                         12

(D.P.R. 2007) (citing Molina-Quintero, 234 F. Supp. 2d at 111-12).

In light of evidence presented by Plaintiff, a jury could reasonably find that the alleged harassment was severe. Plaintiff's evidence includes her unsworn statement under penalty of perjury (Docket No. 40-2), her deposition (Docket No.46-1) and the depositions of Ponderosa employees Joshua Muratti and David Soto (Docket Nos. 46-3 and 46-4). These documents relate sexually charged comments and gestures made by Ponderosa managers Hector Rabell and Juan Delgado directed at Plaintiff during her employment.[5] The determination regarding whether Rabell and Delgado's alleged conduct was sufficiently severe or pervasive requires a fact intensive analysis and will involve assessing the weight of evidence and credibility of witnesses. Consequently, it is better resolved by a jury at trial, not by the court at summary judgment. See Figueroa-Garcia, 490 F. Supp. 2d at 205. For this reason, the court **DENIES** BMJ's motion for summary judgment as to the Plaintiff's sexual harassment claim, in as much as there is an issue of material fact as to whether or not the alleged conduct is sufficiently severe or pervasive to create a hostile environment.

       **b.**  **Retaliation**

In addition to the hostile work environment claim, Plaintiff claims that she was retaliated

---

[5] Plaintiff declared under penalty of perjury that "[o]n one occasion, [she] was squatting and cleaning the grill, and Mr. Juan Delgado approached [her], and placed his crotch on [her] face." (See Docket No. 40-2 ¶ 7.) In her deposition, Plaintiff testified that "[Mr. Rabell and Mr. Delgado] would consecutively make comments . . . unwanted sexual insinuations to [her]." (See Docket No. 46-1 at 4.) Specifically, "[h]ow two women in bed would look like" and "I'm going to make you respect a man." (See Docket No. 46-1 at 5.) Plaintiff further testified that [Mr. Rabell] "would approach [her] from behind making [her] feel [his] breathing in [her] ear." (See Docket No. 46-1 at 5.) Plaintiff replied in the affirmative when ask if she was subjected to such comments "[e]very day that [she] went to work at Ponderosa." (See Docket No. 46-1 at 6.) Mr. Soto testified that "[he] saw a few things that . . . weren't proper for a person like Rabell . . . [a] manager" like "sex comments, [Mr. Rabell] used to talk about a lot of sex comments, make comments about different things that he did or did not do with some employees of Ponderosa . . . he used to brag about [it] . . . and a few times [he] heard [Mr. Rabell] say things to [Plaintiff]." (See Docket No. 46-4 at 3.) Mr. Soto added that "[s]ince . . . [Plaintiff] is a lesbian [Mr. Rabell] used to tell her that he . . . would make her a woman again, that [he] would take out the lesbian from her." Id. Mr. Muratti testified that he was in the kitchen and witnessed when Plaintiff "bent down to clean the area and . . . [Mr. Delgado] came on the side of her and . . . he put, basically, his genitals in front of her face." (See Docket No. 46-3 at 4.)

against after she complained of discriminatory conduct and filed a discrimination charge with the ADU. (See Docket No. 9 ¶¶ 43, 45 and 57.)

Title VII makes it unlawful for an employer to retaliate against a person who complains about discriminatory employment practices. See 42 U.S.C. § 2000e-3(a). "The relevant question is whether [the employer] was retaliating against [the plaintiff] for filing a complaint, not whether he was motivated by gender bias at the time." DeCaire v. Mukasey, 530 F.3d 1, 19 (1st Cir. 2008). Accordingly, for the purpose of a retaliation claim, the relevant conduct is that which occurred *after* the plaintiff complained about his superior's discriminatory acts. Acosta v. Harbor Holdings & Operations, Inc., 674 F. Supp. 2d 351, 365 (D.P.R. 2009) (quoting Quiles-Quiles v. Henderson, 439 F.3d 1, 8 (1st Cir. 2006)) (internal quotations omitted).

A *prima facie* case of retaliation under Title VII must establish three elements: (1) that plaintiff engaged in a protected activity; (2) a materially adverse employment action that harmed the plaintiff inside or outside the workplace and that was harmful enough to "dissuade a reasonable worker from making or supporting a charge of discrimination; and (3) that the adverse action taken against the plaintiff was casually linked to his or her protected activity. Bibiloni Del Valle v. Puerto Rico, 661 F. Supp. 2d 155, 168 (D.P.R. 2009) (quoting Mariani-Colon v. Dep't of Homeland Sec., 511 F.3d 216, 223 (1st Cir. 2007)).

Once the plaintiff satisfies her *prima facie* burden, the defendant must produce a legitimate, non-retaliatory reason for the adverse action. Enica v. Principi, 544 F.3d 328 (1st Cir. 2008) (citing Calero-Cerezo v. U.S. Dept. of Justice, 355 F.3d 6, 26 (1st Cir. 2004)). "If the employer's evidence creates a genuine issue of fact, the presumption of discrimination drops from the case, and the plaintiff retains the ultimate burden of showing that the employer's stated reason for the challenged actions was in fact a pretext for retaliating." Harbor Holdings, 674 F. Supp. 2d at 366 (quoting Billings v. Town of Grafton, 515 F.3d 39, 55 (1st Cir. 2008)).

Establishing a *prima facie* case of retaliation is a "relatively light burden." Mariani-Colon, 511 F.3d at 224 (citing Pomales, 447 F.3d at 85). In the present case, Plaintiff meets the first two prongs. "An employee has engaged in an activity protected by Title VII if she has either opposed any practice made unlawful by Title VII, or made a charge, testified, assisted, or participated in any

manner in an investigation, proceeding, or hearing under Title VII." Torres-Negron v. Merck & Co., Inc., 488 F.3d 34, 44 (1st Cir. 2007) (internal citations and quotations omitted). Plaintiff engaged in protected activity by filing a charge of discrimination with the ADU and the EEOC on June 8, 2007. See Mariani-Colon, 511 F.3d at 223. With regard to a materially adverse employment action, Plaintiff was dismissed from her employment. "[I]t is well settled that an employer's dismissal of an employee is "a materially adverse action sufficient to dissuade a reasonable worker from making or supporting a charge of discrimination." Id. at 223-224.

At issue is whether Plaintiff can satisfy the third prong of a *prima facie* Title VII retaliation claim, which requires that a plaintiff alleging retaliation show a causal relationship between the protected conduct and the adverse employment action. Figueroa-Garcia, 490 F. Supp. 2d at 209. In response to a motion for summary judgment, Plaintiff carries the burden to present admissible evidence of retaliatory intent. Harbor Holdings, 674 F. Supp. 2d at 367. "The court need not consider unsupported suppositions." Id.

Close temporal proximity between the adverse employment action and a plaintiff's protected activity, without further evidence, may give rise to a causal connection. See Calero-Cerezo, 355 F.3d at 25. "The Supreme Court has stated that the cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close." Id. (quoting Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273-274 (2001)) (internal quotations omitted). The First Circuit has found that a temporal proximity of two months between an employee's allegations of discrimination and his dismissal was sufficient to establish a *prima facie* case of retaliation. See Mariani-Colon, 511 F.3d at 224 (citing Pomales, 447 F.3d at 85). However, "[t]hree and four month periods have been held insufficient to establish a causal connection based on temporal proximity." Id. Plaintiff filed a charge of discrimination on June 8, 2007. (See Docket No. 53-14.) Plaintiff's employment with BMJ was terminated on October 23, 2007. (See Docket Nos. 37 at 19; 57-1 at 14.) Plaintiff's termination came more than four months after she filed a complaint with the ADU. When adverse action is not close in time to protected conduct, a plaintiff must provide additional evidence to establish causation. See Anderson

v. Coors Brewing Co., 181 F.3d 1171, 1179 (10th Cir. 1999).

After a review of the record, the court finds that it lacks any additional evidence of causation. Plaintiff's evidence merely consists of her deposition (Docket Nos. 46-1 and 46-2), her charge of discrimination with the ADU (Docket No. 53-14), and a collection of letters between the parties' attorneys (Docket Nos. 53-2, 53-3, 53-4, 53-5, 53-6, 53-7, 53-8, 53-9, 53-10, 53-11, 53-12, 53-13). (See Docket No. 36 at 16-17.) "To defeat summary judgment, a plaintiff must make a colorable showing that an adverse action was taken 'for the purpose of retaliating' against [her]." Mariani-Colon, 511 F.3d at 224 (quoting Randlett v. Shalala, 118 F.3d 857, 862 (1st Cir. 1997)). In the present case, Plaintiff has not made this showing. Accordingly, because Plaintiff cannot show a causal connection between her termination and her complaint of sexual harassment, she fails to establish a *prima facie* case of retaliation.

However, even if the court were to assume that Plaintiff is able to establish a causal connection, BMJ has offered a legitimate, non-discriminatory reason for her termination. Plaintiff has not demonstrated that BMJ's reasons for her termination are pretexual, nor does she proffer additional evidence from which a reasonable fact-finder could infer a retaliatory motive on BMJ's behalf. Accordingly, summary judgment is **GRANTED** on Plaintiff's Title VII retaliation claim.

### 2.    Local Law Claims

Lastly, BMJ requests that the court decline to exercise supplemental jurisdiction over the state law claims if the federal law claims are dismissed. (See Docket No. 26 at 20.) BMJ adds that, should the court decide to exercise supplemental jurisdiction, Plaintiff's state law claims should be dismissed because they "lack merit under applicable law." (See Docket No. 26 at 21.)

Plaintiff asserts several causes of action under the laws of the Commonwealth of Puerto Rico. Specifically, she alleges claims under Puerto Rico Laws 17, 69, 100, 80 and 115.

#### a.    Law 17, Law 69, and Law 100

Law 17, Law 69, and Law 100 serve virtually identical purposes and outlaw virtually identical behaviors. Each proscribes sexual harassment in the form of a hostile work environment. See Suarez Ruiz v. Figueroa Colon, 145 P.R. Dec. 142, 148-49 (1998) (explaining Law 17 and Law 69 represent more specific prohibitions on conduct already proscribed by Law 100 and noting all

**Civil No. 09-1593 (GAG)**                             16

three statutes form a single legislative scheme to further the public policy against gender discrimination); Miro Martinez v. Blanco Velez Store, Inc., 393 F. Supp. 2d 108, 114 (D.P.R. 2005) (discussing relationship between Law 17, Law 69, and Law 100). Law 69 proscribes discrimination in the workplace on the basis of gender. See P.R. Laws Ann. tit. 29, § 1321. Law 100 also prohibits discrimination on the basis of gender. See id. at § 146. The Supreme Court of Puerto Rico has held that sexual harassment is a form of sex discrimination proscribed by Law 100. See Delgado Zayas v. Hospital Interamericano, 137 P.R. Dec. 643, 651 (1994). Moreover, this court has recognized that the prohibition on gender discrimination in Law 69 overlaps with Law 17's prohibition against sexual harassment in the workplace. See Miro Martinez, 393 F. Supp. 2d at 114.

Law 17, the most recent and specific of the laws addressing sexual harassment, largely tracks the language of the EEOC guidelines regarding hostile work environment claims. This court has recognized that Law 17 conforms to the hostile work environment requirements established in Title VII. See Garcia v. Suarez & Co., 288 F. Supp. 2d 148, 161 (D.P.R. 2003).

In the present case, Plaintiff's Title VII hostile work environment claim survives BMJ's motion for summary judgment. Consequently, the court concludes that her hostile work environment-based claim under Laws 17, 69, and 100 also withstands summary disposition. The court, therefore, **DENIES** BMJ's motion for summary judgment on Plaintiff's hostile work environment claim under Puerto Rico law.

Conversely, Plaintiff's state law retaliation claim does not withstand summary judgment. Law 17 protects an employee against retaliatory action by an employer due to an employee's participation in the lodging or investigation of a sexual harassment complaint. See P.R. Laws Ann. tit. 29, § 155h; Campos-Orrego v. Rivera, 175 F.3d 89, 95 (1st Cir. 1999); Matos Ortiz v. Puerto Rico, 103 F. Supp. 2d 59, 63 (D.P.R. 2000) (noting Law 17 supports sexual harassment and retaliation claims). Law 69 makes it unlawful for an employer "to dismiss or discriminate against any employee or participant who files a complaint or charge, or is opposed to discriminatory practices, or participates in an investigation or suit for discriminatory practices against the employer." P.R. Laws Ann. tit. 29, § 1341; Rivera v. Johnson & Johnson, 436 F. Supp. 2d 316, 326 (D.P.R. 2006) (dismissing Law 69 retaliation claim). In this case, the court concluded that Plaintiff

failed to present sufficient evidence to raise a triable issue regarding whether BMJ terminated her employment in retaliation for complaining of sexual harassment. Thus, to the extent that Plaintiff's state law claims rely upon a retaliation theory, the court **GRANTS** BMJ's motion for summary judgment.

### b.   Law 80

According to Law 80, a dismissal without just cause is "[one] made by mere whim or fancy of the employer or without cause relative to the normal operation of the establishment." P.R. Laws Ann. tit. 29, § 185b. The statute allows termination for a number of reasons related to the employee's job performance including an employee's improper and disorderly conduct, negligent attitudes toward her work, and violations of the employer's policies. See id.; Alvarez-Fonseca v. Pepsi Cola of P.R. Bottling Co., 152 F.3d 17, 28 (1st Cir. 1998). The employer bears the ultimate burden to prove that it had just cause to terminate the employee See P.R. Laws Ann. tit. 29, § 185k; Alvarez-Fonseca, 152 F.3d at 28.

In this case, BMJ explained that its decision to terminate Plaintiff came on the heels of its investigation of an incident involving Plaintiff and another Ponderosa employee. (See Docket No.53-13.) The record shows that Plaintiff's termination was the final step in a series of progressive disciplinary measures taken by BMJ. Plaintiff failed to raise a genuine issue of fact regarding BMJ's reason for terminating her employment. BMJ has therefore demonstrated just cause. Consequently, BMJ's motion for summary judgment on Plaintiff's Law 80 claim is **GRANTED**.

### c.   Law 115

Law 115 "protects employees that collaborate in investigations or offer testimony before an administrative, judicial or legislative forum, form adverse actions by their employers." Salgado-Candelario v. Ericsson Caribbean, Inc., 614 F. Supp. 2d 151, 177 (D.P.R. 2008) (citing P.R. Laws Ann. tit. 29 § 194a). The evidentiary mechanism provided by Law 115 mirrors the burden shifting framework which the court already addressed in disposing of Plaintiff's Title VII retaliation claims. See Rivera-Rodriguez v. Sears Roebuck de Puerto Rico, Inc., 367 F. Supp. 2d 216, 230 (D.P.R. 2005); Salgado-Candelario, 614 F. Supp. 2d at 177; Mojica v. El Conquistador Resort and Golden Door Spa, 714 F. Supp. 2d 241, 262 (D.P.R. 2010). Accordingly, the court incorporates those

**Civil No. 09-1593 (GAG)**                    18

arguments and **DISMISSES** Plaintiff's Law 115 for the same reasons as the Title VII retaliation claims.

### IV.    Conclusion

For the reasons set forth above, the court **DENIES** in part and **GRANTS** in part BMJ's motion for summary judgment (Docket No. 26). The court hereby **DENIES** BMJ's motion for summary judgment with respect to the hostile work environment claims under federal and Puerto Rico law. The court **GRANTS** summary judgment on the issue of retaliation under federal and Puerto Rico law and the unjust dismissal claim under Law 80. Additionally, the court **DISMISSES** Plaintiff's Law 115 claim.

**SO ORDERED**.

In San Juan, Puerto Rico this 24th day of February, 2011.

*S/Gustavo A. Gelpí*

GUSTAVO A. GELPÍ

United States District Judge